IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>CALGON CARBON CORPORATION, )<br><br><br><br>Defendant. ) | CIVIL ACTION NO.<br><br>JUDGE |

COMPLAINT

The United States of America, by and through the undersigned attorneys, by the authority of the Attorney General of the United States and at the request of and on behalf of the United States Environmental Protection Agency ("EPA"), alleges the following:

## STATEMENT OF THE CASE

1.      This is a civil action brought pursuant to Section 3008(a) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6928(a) and Section 309(d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(d), against Calgon Carbon Corporation ("Calgon Carbon").    The United States seeks injunctive relief and civil penalties for violations of RCRA, the CWA, and their state and federal implementing regulations at Calgon Carbon's "Big Sandy Plant" located at Route 23 South, Catlettsburg, Kentucky.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 6928(a), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the claims arose and the violations occurred in this district.

## DEFENDANT

4.      Defendant Calgon Carbon is a corporation.    Calgon Carbon is a Delaware Corporation and is publicly traded on the New York Stock Exchange.    Calgon Carbon's corporate headquarters are located in Pittsburgh, Pennsylvania and its principal address is P.O. Box 717, Pittsburgh, Pennsylvania 15230-0717.

## STATUTORY FRAMEWORK

### RCRA

5.      RCRA establishes a "cradle-to-grave" hazardous waste handling program administered by EPA or states authorized by EPA, 42 U.S.C. § 6901.

6.      RCRA's Subchapter III (RCRA §§ 3001-3023, 42 U.S.C. §§ 6921-6940, also known as "Subtitle C") requires EPA to promulgate regulations establishing performance standards applicable to facilities that generate, transport, treat, store, and/or dispose of hazardous wastes.    Together RCRA

Subtitle C and the Subtitle's implementing regulations, set forth at 40 C.F.R. Parts 260-279, comprise EPA's RCRA hazardous waste program.

7.	Pursuant to 42 U.S.C. § 6926(b), States may be authorized by EPA to administer and enforce hazardous waste management programs under RCRA.   On January 17, 1985, the Commonwealth of Kentucky was authorized by EPA to administer and enforce its own hazardous waste management program.   42 U.S.C. §§ 6921-6939b.   The requirements of the authorized state program are found in Kentucky Revised Statutes (KRS) Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste et seq.   The Kentucky Hazardous Waste Management Regulations, as authorized, appear at Title 401 of Kentucky Administrative Regulations (KAR).   Section 3008 of RCRA vests EPA with concurrent jurisdiction to enforce the provisions of the federal and authorized state hazardous waste management programs.   42 U.S.C. § 6928(a).   EPA is enforcing Kentucky hazardous waste management requirements as approved and authorized by the United States.   As Kentucky has not been granted authorization to administer certain RCRA requirements including those found at 40 C.F.R. Part 266; 40 C.F.R. 264, Subparts AA, BB, and CC; and 40 C.F.R. 265, Subparts AA, BB, and CC, EPA will enforce these federal requirements.

8.	Pursuant to 401 KAR Chapters 34, 35, and 38 (40 C.F.R. Parts 264 and 265, Subparts K & L), owners and operators of hazardous waste storage facilities are required to meet numerous requirements for permitted or interim status storage of all hazardous waste including: waste analysis, containment design, monitoring, and record keeping.

9.	Pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), EPA may bring a civil action for injunctive relief and/or penalties if the Administrator determines that a person has violated or is in violation of Subtitle C of RCRA.   Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g), and its implementing regulations, any person who violates Subtitle C of RCRA shall be liable to the United States for a civil penalty in an amount of up to $32,500 for each day of such violation occurring after March 15, 2004, and in an amount of up to $37,500 for each day of violation occurring after January 12, 2009.   40 C.F.R. § 19.4.

Clean Water Act

10.     Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the "discharge of pollutants" by any person into waters of the United States except in compliance with the Section, including, where applicable, a NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

11.     Section 402(a) of the Act, 33 U.S.C. § 1342(b), provides that EPA may approve a state NPDES permitting program within its jurisdiction. Kentucky, through the Kentucky Department for Environmental Protection ("KYDEP"), is authorized to issue NDPES permits in Kentucky.

12.     Section 308 of the Act, 33 U.S.C. § 1318, authorizes EPA to require inspection and monitoring to determine compliance with the Act and NPDES permits through Discharge Monitoring Reports ("DMRs") and quality assurance requirements. Data submitted on DMRs must accurately reflect the pollutants in, and toxicity of, the discharges of the permittee.

13.     Section 309(b) of the Act, 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person is in violation of Section 301 of the Act, 33 U.S.C. § 1311, or any permit condition or limitation in a NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

14.     Pursuant to Section 309(d) of the Act, 33 U.S.C. § 1319(d), any person that violates Section 301 of the Act, 33 U.S.C. § 1311, or violates any permit condition or limitation in a NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342, shall be subject to a civil penalty in an amount of up to $32,500 for each day of such violation occurring after March 15, 2004, and in an amount of up to $37,500 for each day of violation occurring after January 12, 2009. 40 C.F. R. § 19.4.

GENERAL ALLEGATIONS

15.     Calgon Carbon's Big Sandy Plant ("Big Sandy") is located near Catlettsburg, Kentucky, adjacent to the Big Sandy River on approximately 25 acres of land. The facility manufactures virgin carbon products and regenerates spent carbon.

16.     Calgon Carbon is a "person" within the meaning of KRS 224.01-010(17) and Section 1004(15) of RCRA, 42 U.S.C. § 6903(15), and Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

4

17.    On September 20 and 21, 2005, EPA and KYDEP conducted an inspection of the Big Sandy Facility.

18.    EPA discovered a number of RCRA and CWA violations at the Big Sandy Facility during this inspection.    EPA issued Notices of Violation on January 20, 2007, and August 4, 2008, for RCRA and CWA violations, respectively.

### RCRA

19.    Calgon Carbon is the "owner" and "operator" of the Big Sandy Facility, as those terms are defined in 401 KAR 31:005 and 40 C.F.R. § 260.10.

20.    Calgon Carbon has a RCRA permit, No.: KYD-005-009-923, which allows it to store "hazardous waste" at the Big Sandy facility.

21.    Calgon Carbon treats spent activated carbon (hazardous waste) returned from its customers, which is contaminated with numerous RCRA characteristic and listed hazardous wastes using a natural gas fired hearth furnace at its Big Sandy Facility.    The furnace or Carbon Regeneration Unit ("CRU") consists of eight hearths.    The first three hearths are used to evaporate water from the carbon. The remaining five hearths are used to incinerate volatile organic compounds and regenerate the carbon.

22.    The combustion process in the five hearths generates gaseous emissions containing hazardous residues derived from the hazardous waste spent carbon.    Those emissions and residues are first treated in an "afterburner" where the gas is combusted to remove organic compounds.    The emissions are next run through a sodium carbonate dry scrubber and finally through a bag house unit that recovers "bag-house powder" from the emissions.    Calgon Carbon operates its dry scrubber with a stoichiometric ratio of sodium carbonate to acid gas of approximately 1.3:1, which results in an average excess of approximately thirty percent sodium carbonate being emitted to the bag house. As a result, a portion of the bag-house powder consists of un-reacted sodium carbonate (or "free soda").

23.     The bag-house powder accumulates in the bag house and requires periodic collection to ensure proper functioning of the bag house.   The bag-house powder is a RCRA hazardous waste as it is derived from the treatment of listed hazardous waste in the CRU.

24.     Beginning in approximately 1992, through approximately August 2008, Calgon Carbon used the collected bag house powder to neutralize the acidic wastewater in its onsite wastewater treatment process.  Calgon Carbon used the bag house powder for its sodium carbonate content, as a partial substitute for a commercial product (primarily used hydrated lime), although Calgon Carbon never made a regulatory demonstration that the bag house powder is an effective substitute for a commercial product. Calgon Carbon discharged the bag house powder mixed with the neutralized wastewater into a series of three lagoons (surface impoundments) used to accumulate carbon and coal fines from the facility's production of the activated carbon.   The lagoons are made of earthen clay and located adjacent to the Big Sandy River.   Solids from the wastewater settled in lagoons 1 and 2.   Effluent was then transferred from these lagoons to lagoon 3 for further retention.   Water from lagoon 3 was finally discharged through Calgon Carbon's NPDES permitted outfall to the Big Sandy River.   The lagoon solids are RCRA hazardous wastes because they are a mixture of the bag house powder and solid wastes.

25.     Periodically, Calgon Carbon dredged the lagoons to prevent them from filling with carbon and coal fines generated from the production of the activated carbon.   Calgon Carbon processed the dredged sediments in a portable filter press that was temporarily located adjacent to the lagoons during dredging events.   The dredged sediments were then placed in a pile directly on the land adjacent to the lagoons.   The dredged sediment pile is a RCRA hazardous waste because it is a mixture of bag house powder and other solid wastes.

26.     Initially, Calgon Carbon disposed of the sediments into its offsite Residual Solid Waste Landfill owned by Calgon Carbon (landfill).   The landfill is located a few miles from the Big Sandy

Plant, approximately one-half mile Southwest of Route 23 in Boyd County, Kentucky. The landfill was initially permitted in 1979, and is approximately 158 acres in size. It is permitted as a "residual landfill" pursuant to the management provisions of K.R.S. Chapter 224, and is not permitted to accept hazardous wastes. Based on representations made by Calgon Carbon, the landfill was only actively operated for a period of three weeks per year to dispose of dredged sediments.

27. In June 2001, Calgon Carbon stopped disposing of dredged sediments in its landfill. Instead, Calgon Carbon began selling the dredged sediments for combustion/energy recovery. The dredged sediments, however, were not sufficiently de-watered to be of value when first removed and filter pressed, so Calgon Carbon staged the dredged sediments for several months on the ground in piles where it was allowed to further de-water and dry out before shipment. Once sufficiently de-watered, the dredged sediment was sold for coal blending. Sales began in approximately 2002. However, the dredged sediments were not shipped with land disposal restriction determinations, nor with any notification that the sediment was listed hazardous waste. Following discussions with EPA, Calgon Carbon stated that it ceased the sale of dredged sediments from the Big Sandy Plant in August 2008. Calgon Carbon also stored the dredged sediments on the ground in geobags.

28. Calgon Carbon also manufactures virgin-grade activated carbon at its Big Sandy Facility using a thermal activation process. Coal is crushed and mixed with tar and later heated in two rotary kilns until carbonized. It is then screened and fired again before being washed with hydrocholoric acid, dried, and shipped.

Clean Water Act

29. Pursuant to Section 402(a) of the Act, 33 U.S.C. § 1342(a), Kentucky issued Calgon Carbon NPDES permit No.: KY0022276.

30. At all relevant times herein, Calgon Carbon's NPDES permit has authorized Calgon

Carbon to discharge from Outfalls 001, 002, and 003, subject to certain limitations and conditions set forth in the NPDES permit.

31.    Calgon Carbon's NPDES permit establishes certain limitations on the mass and concentration of pollutants Calgon Carbon may discharge during a given period.    The NDPES permit also requires Calgon Carbon to monitor its discharges and submit periodic "DMRs" to Kentucky.

32.    Calgon Carbon discharged industrial waste, a "pollutant" within the meaning of Sections 502(6) and 502(12) of the CWA, 33 U.S.C. §§ 1362(a) and 1362(12) into the Big Sandy River from its NPDES permit Outfalls 001, 002, and 003.

33.    The Big Sandy River is a "navigable water" of the United States within the meaning of 502(12) of the CWA, 33 U.S.C. § 1362(12).

34.    White's Creek, which flows into the Big Sandy River, is a "navigable water" of the United States within the meaning of 502(12) of the CWA, 33 U.S.C. § 1362(12).

35.    Calgon Carbon Outfalls 001 (Big Sandy River mile point 5.9) and 002 (Big Sandy River mile point 6.0) are pipes and Outfall 003 (White's Creek mile point 1.0) is a ditch.    Outfalls 001, 002, and 003 are "point sources" as defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14) because they are "discernible, confined and discrete conveyances, including but not limited to any pipe, ditch . . . from which pollutants are or may be discharged."

36.    Calgon Carbon discharged "pollutants" within the meaning of Sections 502(6) and 502(12) of the CWA, 33 U.S.C. §§ 1362(a) and 1362(12) into "navigable waters" of the United States within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

## FIRST CAUSE OF ACTION

### RCRA Hazardous Waste Storage Permit Violations

37.    The allegations contained in paragraphs 1-36 are realleged and incorporated by reference herein.

### Improper Operation of a Hazardous Waste Containment System

38.    Calgon Carbon's RCRA permit governs container management practices at the Big Sandy

facility.

39.     Calgon Carbon's RCRA permit requires the permittee to maintain its Hazardous Waste Containment System in accordance with KAR 34:180, Section 6.29.

40.     KAR 34:180, Section 6(2)(a) (40 C.F.R. § 264.175) requires hazardous waste container storage areas to have a containment system that is free of cracks or gaps and that is impervious to leaks, spills, and accumulated precipitation.

41.     During EPA's visit to the Big Sandy facility on September 20-21, 2005, EPA observed that the concrete floor in the Thaw Building did not have a protective coating to create an impermeable surface.   EPA also observed that the floor was cracked and that previous repairs to the floor were in an eroded condition.

42.     During the inspection, EPA observed that the pavement in the Carbon Regeneration Unit Container Storage Yard, an outdoor area used to store hazardous waste, was cracked and the pavement contained old repairs that were in an eroded condition.

43.     Calgon Carbon violated its Permit and state and federal hazardous waste container management regulations at the Big Sandy facility by failing to keep the containment system properly maintained.

Improper Storage of Hazardous Waste in Non-Permitted Containers

44.     Calgon Carbon's RCRA permit provides that the permittee can only store hazardous waste in the Thaw Building in containers listed in Table D-1 of the permit.

45.     During the inspection, EPA observed two 20,000-gallon containers containing hazardous waste in the Thaw building.   These two containers are not listed in Table D-1 of Calgon Carbon's RCRA permit.

46.     Calgon Carbon violated its permit and state and federal regulations by storing hazardous waste in containers not listed in its RCRA permit.

Failure to Clearly Mark Hazardous Waste Containers and Enter Required Information in Facility's Operating Record

47.     Calgon Carbon's RCRA permit provides that the land disposal of hazardous wastes under 401 KAR Ch. 37 is prohibited unless the requirements of the Chapter are met, including container labeling and maintenance of a written operating record.

48.     Pursuant to 401 KAR 37:050 (40 C.F.R. § 268.50), each container of hazardous waste at the Big Sandy facility must be marked to identify its contents and the date each period of accumulation begins.

49.     Pursuant to 401 KAR 34:050 (40 C.F.R. § 264.73), an owner or operator of a hazardous waste facility is required to keep a written operating record at the facility with information for tanks including a description and the quantity of each hazardous waste received, and the date of treatment, storage, or disposal as required in 401 KAR 34:290.

50.     Pursuant to 401 KAR 34:290 (40 C.F.R. Part 264 Appendix I), an owner or operator of a hazardous waste facility is required to record the EPA hazardous waste number for the waste, the physical form of the waste, and the weight or volume and density of the waste.

51.     During the September 2005 inspection, EPA observed waste codes on containers of hazardous waste in the Thaw Building and in the outside container storage yard, indicating that those containers were restricted from land disposal under Subpart C of 40 C.F.R. Part 268.   The inspectors noticed numerous containers that were not marked with the date that storage began in violation of 401 KAR 37:050, Section 1(b)(1) (40 C.F.R. § 268.50(a)(2)(I)).

52.     During the inspection, EPA observed numerous containers of spent carbon in the Thaw Building and in the outside container storage yard that were restricted from land disposal under Subpart C of 40 C.F.R. Part 268, which were not marked with the date that storage began in violation of 401 KAR 37:050, Section 1(b)(1) (40 C.F.R. § 268.50(a)(2)(I)).

53.     EPA reviewed Calgon Carbon's daily reports for a 20 month period.   EPA found that the information required regarding hazardous wastes being stored in permitted tanks was missing from the daily reports in violation of 401 KAR 34:050 (40 C.F.R. § 264.73).

54.     Calgon Carbon violated its RCRA permit and state and federal regulations by failing to

properly mark its hazardous waste containers and by failing to keep accurate records of hazardous waste stored at the Big Sandy facility.

## Improper Storage of Hazardous Waste in a Container Not in Good Condition

55.  Calgon Carbon's RCRA permit requires the permittee to transfer the contents of containers holding hazardous waste from containers that are not in good condition (e.g. severe rusting or apparent structural defects or leaks) to containers that are in good condition pursuant to 401 KAR 34:180 (40 C.F.R. § 264.171).

56.  During the inspection, EPA observed a 55-gallon container of hazardous waste in the Thaw Building that was rusted along its side and bottom perimeter and appeared to be leaking.

57.  Calgon Carbon violated its RCRA permit and state and federal regulations by storing hazardous waste in a container that was not in good condition and by failing to transfer the hazardous waste to a container in good condition.

## Failure to Maintain a Facility to Minimize the Possibility of Releases

58.  Calgon Carbon's RCRA permit requires the permittee to maintain and operate the facility to minimize the possibility of a fire, explosion, or unplanned sudden and non-sudden release of hazardous waste to air, soil, or surface water, which could threaten human health and the environment pursuant to 401 KAR 34:030 (40 C.F.R. § 264.31).

59.  During the inspection, EPA observed spilled, hazardous waste in the outside container storage yard on the pavement in the area near the hazardous waste containers.

60.  During the inspection, EPA observed three tanks in RCRA Permitted Hazardous Waste Tank Area B with accumulated hazardous waste covering the vents and the roofs of the tanks.

61.  During the inspection, EPA observed eight tanks in RCRA Permitted Hazardous Waste Tank Area B that were not maintained under pressure as required by 40 C.F.R. § 264.1033(k)(2), resulting in releases of hazardous constituents to the air. The main vent line from these tanks was also broken in half.

62.  Calgon Carbon violated its RCRA permit and state and federal regulations by failing to

properly maintain tanks in RCRA Permitted Hazardous Waste Tank Area B.

Failure to give KYDEP Prior Notice of the Closure of the Furnace Feed Tank

63. Pursuant to Calgon Carbon's RCRA permit, condition III.E.10, Calgon Carbon must give the Director notice of any planned physical alterations or additions that could affect solid waste management units at the facility.

64. Pursuant to 401 KAR 38:040, Section 3(1)(d)(3)(d)(2) (40 C.F.R. § 270.42(a)(2), Appendix 1, Section D.1.b), prior approval of KYDEP is required for minor modifications relating to the closure of any unit.

65. Calgon Carbon failed to notify KYDEP of its planned closure of the furnace feed tank.

66. Calgon Carbon violated its RCRA permit and state and federal regulations by failing to provide KYDEP with notice of its closure of the furnace feed tank.

Failure to Submit an Amended Closure Plan for Decommissioning the Furnace Feed Tank

67. Pursuant to Calgon Carbon's RCRA permit, condition II.G.3, Calgon Carbon must accomplish closure as specified in its closure plan and in accordance with 401 KAR 34:070, Section 3 (40 C.F.R. § 264.112(c)).

68. Calgon Carbon's closure plan is incorporated into its RCRA permit and is described in Permit Modification #4. Section 3 of Permit Modification #4 requires a revision of the closure plan before any modification to the facility proceeds, including partial closure.

69. Calgon Carbon permanently decommissioned the Furnace Feed Tank and never amended its closure plan in violation of its closure plan, RCRA permit, and applicable regulations.

70. Calgon Carbon violated its RCRA permit and state and federal regulations by failing to amend its closure plan and RCRA permit.

Failure to Record Inspection of Hazardous Waste Containers and Tanks

71. Calgon Carbon's permit modification #4, Part VI, Attachment II, Section F-2a, Appendix F-4, for small containers, requires Calgon Carbon to use specified forms as contained in the Appendix F-4 and F-5 of the permit.

72.     Calgon Carbon's permit modification #4, Part VI, Attachment II, Section F-2a, Appendix F-1 through F-3, covering inspections of the Reaction System, requires Calgon Carbon to inspect certain areas of the Carbon Regeneration Unit and specify which forms are to be used for inspecting these areas.

73.     Calgon Carbon did not use the forms required for small containers and therefore failed to capture all of the information required under its RCRA permit.

74.     Calgon Carbon failed to provide EPA with any documentation showing it performed unloading inspections for its small containers as required under its RCRA permit.

75.     Calgon Carbon did not use the form required for weekly inspections of its Reaction System and therefore failed to capture all of the information required under its RCRA permit.

76.     Calgon Carbon also did not use the form required for daily hazardous waste inspections and therefore failed to capture all of the information required under its RCRA permit.

77.     Calgon Carbon violated its RCRA permit by failing to provide documentation of its inspections and by failing to use the inspection forms required under its RCRA permit.

Failure to Document Inspections in Accordance with RCRA Permit.

78.     Calgon Carbon's permit modification #4, Part VI, Attachment IV, Section F-2b(2), requires that the interior of every tank in the Reactivation System, Area B, be inspected every two years consecutively.   If there is no evidence of deterioration following these inspections, the inspections can be conducted thereafter once every four years.

79.     Calgon Carbon has failed to provide EPA with any documentation showing that it performed inspections of the interior of the tanks in Area B of the Reactivation System.

80.     Calgon Carbon violated its RCRA permit by failing to provide documentation that it performed inspections of the tanks in Area B of the Reactivation System.

Failure to Maintain Required Hazardous Waste Documents at the Facility

81.     Pursuant to 401 KAR 34:050, Section 4(2)(K) (40 C.F.R. § 264.73), an off-site treatment facility must maintain a copy of the notice, certification, and demonstration required of the generator of hazardous waste as specified under Section 7(a) of 401 KAR 37:010 (40 C.F.R. § 268.7).

82. Calgon Carbon's permit condition III.G.2 requires it to maintain documents at its facility including the facility's operating record.

83. Calgon Carbon failed to obtain the required hazardous waste information from generators on each shipment of restricted hazardous waste it receives.

84. Calgon Carbon violated its RCRA permit and state and federal regulations by failing to obtain the requisite information from hazardous waste generators.

Failure to Include Necessary Information on Facility's Contingency Plan

85. Calgon Carbon's RCRA Permit condition II.D.1, provides that Calgon Carbon must maintain a contingency plan for the Big Sandy facility.

86. Pursuant to 401 KAR 34:040, Section 3(3) (40 C.F.R. § 264.52(c)), a facility's contingency plan must describe arrangements agreed to by local police departments, fire departments, hospitals, contractors, and state and local emergency response teams to coordinate emergency services in the event of a fire, explosion, or release of hazardous waste from the facility.

87. Calgon Carbon's contingency plan is deficient because it does not include the name and phone number of an emergency response contractor and equipment supplier.

88. Calgon Carbon violated its RCRA permit and state and federal regulations by failing to include the requisite information in its facility's contingency plan.

Failure to Maintain Written Job Description for Each Job Related to Hazardous Waste Management at the Facility

89. Pursuant to Permit Condition II.B.5.a, 401 KAR 34:020, Section 7(4)(a) and (b) (40 C.F.R. § 264.16(d)(1) and (2)), owners or operators of a facility must maintain documentation at the facility indicating the name of the employee and job title for each position related to hazardous waste management and a written job description for each position listed.

90. Calgon Carbon failed to provide written job descriptions for staff assigned to plant production, laboratory, maintenance, and manifesting duty positions at the facility. These positions involve the handling of hazardous waste at the facility.

91.    Calgon Carbon has violated its RCRA permit and state and federal regulations by failing to provide written job descriptions for staff responsible for handling hazardous waste at the facility.

Improper Shipment of Hazardous Waste to a Facility that had not Received an EPA ID Number and without a Manifest

92.    Pursuant to RCRA Permit condition II.E.1 and 401 K.A.R. 34:050, Section 2 (40 C.F.R. § 262.12(c)), a generator must not offer his hazardous waste to a facility that has not received an EPA identification number.

93.    Pursuant to RCRA Permit condition II.E.1 and 401 K.A.R. 34:050, Section 2 (40 C.F.R. § 262.20(a)), a generator who offers for transport a hazardous waste must prepare a Manifest.

94.    Calgon Carbon sold its dredged material to a different, unrelated company for coal blending without notifying the company that the dredged material contained RCRA listed hazardous wastes. Calgon Carbon did not prepare a Manifest prior to shipping the dredged material to the company. The company does not have an EPA identification number.

95.    Calgon Carbon has violated its RCRA permit and state and federal regulations by failing to ship its hazardous waste to a facility with an EPA identification number and by failing to prepare a Manifest for such shipment.

## SECOND CAUSE OF ACTION

### Interim Status Violations: Hazardous Waste Tanks

96.    The allegations contained in paragraphs 1-22 and 31-89 are realleged and incorporated by reference herein.

97.    Section 3005(a) of RCRA, 42 U.S.C. § 6925(a), requires an owner or operator of an existing facility or planning to construct a new facility for the treatment, storage, or disposal of hazardous waste to have a RCRA permit.

98.    Section 3005(e)(1) of RCRA, 42 U.S.C. § 6925(e)(1) and 40 C.F.R. § 270.1 provide that,

pending the final disposition of a permit application, an owner or operator of a facility that is required to have a permit may be permitted to operate under an interim status while a permit application is pending.

99.     In April 2000, Calgon Carbon submitted a RCRA permit application for its tanks under RCRA air emission standards.    Because the tanks are not currently permittted, but the facility has applied for a permit, the facility has interim status and is required to adhere to the RCRA air emission standards specified in 40 C.F.R. Part 265, Subparts AA, BB, and CC.

Failure to Properly Operate Process Vents on Hazardous Waste Tanks.

100.     Pursuant to 40 C.F.R. § 265.1033(j), a closed-vent air emissions system must be designed to either operate with no detectable emissions or operate at a pressure below atmospheric pressure and be equipped with a pressure gauge to verify that negative pressure is being maintained.

101.     During the September 2005 inspection, EPA observed that eight tanks at the Big Sandy facility were not designed to operate with no detectable emissions and were not maintained under negative pressure.

102.     Calgon Carbon violated federal interim status RCRA regulations by failing to maintain the tanks under negative pressure.

Failure to Inspect and Monitor Process Vents.

103.     Pursuant to 40 C.F.R. § 265.1033(k)(1)(i) and (ii), the components and connections for a closed vent air emissions system must be inspected and monitored.

104.     Calgon Carbon failed to inspect or monitor the internal components and connections of the closed vent system, including eight tanks, as required by 40 C.F.R. § 265.1033(k)(1)(i) and (ii).

105.     Calgon Carbon violated federal interim status RCRA regulations by failing to inspect and monitor the closed vent system.

Failure to Determine Whether Air Emission Control Equipment Contacts Hazardous Waste

106.     Pursuant to 40 C.F.R. § 265.1063(d), an owner or operator of a facility must determine, for each piece of air emission control equipment, whether the equipment contains or contacts a hazardous waste with an organic concentration that equals or exceeds 10 percent by weight.

107. 40 C.F.R. § 265.1063(d)(3) requires specific documentation where a processor relies on its knowledge of the nature of hazardous waste to make the 10 percent determination. Owner/operators are also required to analyze representative samples on "worst case" volatile waste streams.

108. Calgon Carbon could not supply EPA with documentation or sampling analyses supporting its determination that the air emissions control equipment did not contain or contact hazardous waste with an organic concentration that equaled or exceeded 10 percent.

109. Calgon Carbon violated federal interim status RCRA regulations by failing to supply EPA with proper documentation and sampling analyses that it made the 10 percent determination.

Failure to Control Air Emissions by Failing to Equip Openings in Tank Roofs with Closure Devices

110. Pursuant to 40 C.F.R. § 265.1085(g)(1)(ii), an owner or operator who controls air emissions by venting hazardous waste tanks to an air emissions control device must ensure that any openings in the tank's roofs that are not vented to the air emissions control device are equipped with closure devices.

111. The conservation vents of eight tanks located in Calgon Carbon's RCRA Permitted Hazardous Waste Tank, Area B, were not equipped with closure devices and were open, potentially allowing hazardous waste to volatize into the air.

112. Calgon Carbon violated federal interim status RCRA regulations by failing to equip the conservation vents with closure devices.

Failure to Control Air Emissions by Failing to Secure Closure Device in a Fixed Tank Roof

113. Pursuant to 40 C.F.R. § 265.1085(g), owners and operators of hazardous waste tanks are required to install a closure device in the closed position in the tank with sufficient vapor head space underneath the fixed roof of the tank, as specified in the regulations.

114. At the time of EPA's inspection in September 2005, Calgon Carbon had not secured the closure device on hazardous waste storage tank D-704.

115. Calgon Carbon violated federal interim status RCRA regulations by failing to secure the closure device on tank D-704.

## Failure to Inspect and Monitor Air Emission Control Equipment

116.    Pursuant to 40 C.F.R. § 265.1085(g), owners and operators of air emission control equipment that control emissions of hazardous waste are required to inspect and monitor the air emission control equipment.

117.    Calgon Carbon did not inspect or monitor the closure device on tank D-704.

118.    Calgon Carbon violated federal interim status RCRA regulations by failing to inspect or monitor the closure device on tank D-704.

## Failure to Utilize Air Emissions Control Devices for Hazardous Waste Tanks

119.    Pursuant to 40 C.F.R. § 265.1088(c)(1), an air emissions control device on a hazardous waste tank with a closed-vent system must either: 1) reduce the total organic content of the inlet vapor stream by at least 95% by weight; or 2) be an enclosed combustion device designed and operated in accordance with 40 C.F.R. § 265.1033(c); or 3) be a flare designed and operated in accordance with 40 C.F.R. § 265.1033(d).

120.    Calgon Carbon failed to provide documentation that the air pollution control device used for hazardous waste tanks in RCRA Permitted Hazardous Waste Area B met the criteria for air emissions control devices with a closed-vent system found in 40 C.F.R. § 265.1088(c)(1).

121.    Calgon Carbon violated federal interim status RCRA regulations by failing to provide documentation that it met the criteria for air emissions control devices with a closed-vent system.

## Failure to Prepare and Maintain Records for Air Emission Control Devices on Hazardous Waste Tanks

122.    Pursuant to 40 C.F.R. § 265.1090(e)(1)(i), owners and operators of closed vent air emission control devices on hazardous waste tanks are required to prepare and maintain records that include signed and dated certifications stating that these control devices are designed to operate at the performance level specified in the regulations.

123.    Calgon Carbon did not provide documentation to EPA showing that it had prepared and maintained records containing the information required for closed vent air emission control devices for eight tanks located in RCRA Permitted Hazardous Waste Area B.

124.    Calgon Carbon violated federal interim status RCRA regulations by failing to provide documentation to EPA showing it prepared and maintained records containing the information required for closed-vent air emission control devices.

### THIRD CAUSE OF ACTION

Interim Status Violations: Hazardous Waste Containers

125.    The allegations contained in paragraphs 1-22 and 31-118 are realleged and incorporated by reference herein.

Failure to Control Air Emissions from a Container

126.    Pursuant to 40 C.F.R. § 265.1083(b), an owner and operator must control air emissions for each hazardous waste container in accordance with the standards specified in Sections 265.1085 through 265.1088.

127.    During the September 2005 inspection, EPA's inspector observed a container containing hazardous waste in the Thaw Building that was rusted along its side and bottom perimeter and leaking from a puncture hole in the side of the container.

128.    Calgon Carbon violated federal interim status RCRA regulations by storing hazardous waste in a container that was rusted and leaking.

Failure to Timely Repair a Damaged Hazardous Waste Container

129.    Pursuant to 40 C.F.R. § 265.1087(d)(4), an owner or operator using Level 1 and 2 controls shall inspect hazardous waste containers, covers, and closure devices.   When a defect is detected, an effort to repair the defect must be made within 24 hours after detection and the repair must be completed no later than 5 calendar days after detection or hazardous waste must be removed from the damaged container pending repair.

130.    Calgon Carbon is required to comply with Level 1 and 2 organic air emissions controls for containers.

131.    During the September 2005 inspection, EPA's inspector observed a container containing hazardous waste in the Thaw Building that was rusted along its side and bottom perimeter and leaking

from a puncture hole in the side of the container. Calgon Carbon did not repair the container in a timely manner or transfer hazardous waste out of the damaged container.

132. Calgon Carbon violated federal interim status RCRA regulations by failing to repair a rusted and leaking container containing hazardous waste in a timely manner.

Failure to Transfer Hazardous Waste in and out of a Hazardous Waste Container to Minimize Hazardous Waste Release to the Atmosphere

133. Pursuant to 40 C.F.R. § 265.1087(d)(2), transfer of hazardous waste in and out of a hazardous waste container using Level 2 controls must be conducted in a manner that minimizes exposure of hazardous waste to the atmosphere.

134. Calgon Carbon dumps the contents of its containers into open sumps for treatment, which allows organic emissions to be released into the air. This method does not minimize exposure of volatile waste into the atmosphere.

135. Calgon Carbon violated federal interim status RCRA regulations by dumping the contents of its hazardous waste containers into open sumps.

## **FOURTH CAUSE OF ACTION**

### Interim Status Violations: Carbon Regeneration Unit

136. The allegations contained in paragraphs 1-22 and 31-129 are realleged and incorporated by reference herein

Failure to Bring Thermal Treatment Process to Steady State Before Adding Hazardous Waste

137. Pursuant to 401 KAR 35:250, Section 2 and 40 C.F.R. § 265.373, before adding hazardous waste during the thermal treatment process, the operator must establish steady state operating conditions.

138. Calgon Carbon shut down its Carbon Regeneration Unit from September 7, 2005 to September 23, 2005. When Calgon Carbon subsequently reactivated the Carbon Regeneration Unit, it began feeding hazardous waste into the system before it had achieved steady state operating conditions.

139. Calgon Carbon failed to submit complete monitoring data regarding thermal unit

operations on September 23, 2005, as required by 40 C.F.R. § 265.377(a)(1).

140.    Calgon Carbon violated state and federal interim status RCRA regulations by improperly shutting down and restarting its CRU and by failing to submit to EPA complete monitoring data regarding its thermal unit operations.

Failure to Analyze Hazardous Waste Prior to Treatment in a Thermal Treatment Unit

141.    Pursuant to 401 KAR Section 35:250, Section 3, and 40 C.F.R. § 265.375, owners or operators of hazardous waste facilities must analyze untreated wastes to determine steady state conditions in the thermal treatment process and the type of pollutants that might be emitted.   At a minimum, the owner or operator must determine the heating value of the waste, the halogen and sulfur content, and the concentrations of lead and mercury.

142.    Calgon Carbon failed to show that the hazardous waste fed into the thermal treatment was analyzed for a period of at least 18 months.

143.    Calgon Carbon violated state and federal interim status RCRA regulations by failing to provide evidence that the hazardous waste fed into its thermal treatment unit was analyzed for a period of at least 18 months.

Failure to Perform Minimum Monitoring and Inspection Requirements when Thermally Treating Hazardous Waste

144.    Pursuant to 401 KAR 35:250, Sections 4(1), (2), and (3) and 40 C.F.R. § 265.377, an owner or operator must conduct certain monitoring and testing when thermally treating hazardous waste. The minimal requirements for monitoring and testing include temperature and emissions testing at least every fifteen minutes, observing the stack plume on an hourly basis, and inspecting the complete thermal treatment process associated with the process for leaks, spills, and fugitive emissions on a daily basis.

145.    Calgon Carbon failed to conduct the required monitoring and testing of its thermal treatment process at the required time intervals.

146.    Calgon Carbon violated state and federal interim status RCRA regulations by failing to

conduct the required monitoring and testing of its thermal treatment process.

## FIFTH CAUSE OF ACTION

Failure to Make a Hazardous Waste Determination for Solid Waste Generated by a Facility

147.    The allegations contained in paragraphs 1-22 and 31-140 are realleged and incorporated by reference herein.

148.    Pursuant to 401 KAR 32:010, Section 2 (incorporating 40 C.F.R. § 262.11), a generator of solid waste must determine if the waste is hazardous waste and must manage the waste in accordance with the regulations.

149.    During the September 2005 inspection, EPA observed spilled carbon approximately 50 feet from the Carbon Regeneration Unit, on the access road adjacent to the building that houses the Carbon Regeneration Unit.

150.    The Calgon Carbon staff could not determine the source of or the process that generated this spilled carbon.

151.    Calgon Carbon failed to provide any laboratory analysis of this spilled carbon indicating whether it was virgin grade carbon or if it was contaminated with RCRA hazardous wastes.

152.    Calgon Carbon violated state and federal RCRA regulations by spilling carbon and failing to determine if this carbon was hazardous waste.

## SIXTH CAUSE OF ACTION

Treatment, Storage and Disposal of Hazardous Waste in Waste Piles, the Wastewater Lagoons, and the Residual Solid Waste Landfill Without a Permit or Interim Status

153.    The allegations contained in paragraphs 1-22 and 31-146 are realleged and incorporated by reference herein.

154.    K.R.S. 224.46-520 (RCRA Section 3005(a), 42 U.S.C. § 6925(a)), and 401 KAR Chapter 34 (40 C.F.R. Part 264), require, among other things, that the owner and operator of a hazardous waste

management facility must have a permit or interim status for the treatment, storage and/or disposal of any hazardous waste during the active life of the facility.

155.    From approximately 1992 to approximately August 2008, Calgon Carbon has routinely treated, stored and/or disposed of bag house powder (hazardous waste) mixed with wastewater and dredged sediments containing bag house powder (hazardous waste) in its lagoons (surface impoundments) and waste piles (including geobags) on the land.

156.    From approximately 1992 to approximately June 2001, Calgon Carbon has routinely stored and/or disposed of dredged sediments containing bag house powder (hazardous waste) in its Residual Solid Waste Landfill.

157.    Since at least 1992, Calgon Carbon has operated its Facility's 3 lagoons, waste piles, geobags and Residual Solid Waste Landfill, as hazardous waste management units, i.e., surface impoundments, waste piles and a landfill, and is subject to the hazardous waste requirements at 401 KAR Chapter 34 (40 C.F.R. Part 264).

158.    Calgon Carbon has neither a RCRA hazardous waste permit nor interim status for treatment, storage or disposal of hazardous waste in its lagoons, waste piles, geobags, or the Residual solid Waste Landfill in violation of K.R.S. 224.46-520 (Section 3005 of RCRA, 42 U.S.C. § 6925), and the applicable regulatory requirements found at 401 KAR Chapters 34 and 38 (40 C.F.R. Parts 264 and 270).

159.    Calgon Carbon violated state and federal RCRA statutory and regulatory provisions by treating, storing and disposing of hazardous waste without obtaining a RCRA permit or interim status.

### SEVENTH CAUSE OF ACTION

Failure To Comply With Land Disposal Restriction Requirements By Land Disposing of Restricted Hazardous Waste

160.  ⸱ The allegations contained in paragraphs 1-22 and 31-146 are realleged and incorporated

by reference herein.

161.    Pursuant to RCRA 3004(m) (42 U.S.C. § 6924(m)), 401 K.A.R. 37:040 and 40 C.F.R. Part 268, Subpart D, a generator must meet specific treatment standards for restricted wastes before such wastes may be land disposed.

162.    Calgon Carbon received numerous shipments of hazardous wastes (spent activated carbon) restricted from land disposal pursuant to 401 K.A.R. Chapter 37 and 40 C.F.R. Part 268. Each shipment containing restricted hazardous wastes is accompanied by a Land Disposal Notification and Certification Form prepared by the generator, and each such Notification contains a Land Disposal Determination that specifies an applicable treatment standard pursuant to 401 KAR 37:040 and 40 C.F.R. Part 268, Subpart D.

163.    From approximately 1992 through approximately August 2008, Calgon Carbon disposed of restricted hazardous wastes on the land by discharging bag house powder mixed with wastewater into the facility's three lagoons (surface impoundments) and by placing dredged sediments containing hazardous waste from those lagoons into a waste pile on the land, into geobags on the land, and into the Residual Solid Waste Landfill.

164.    Calgon Carbon never attempted to comply with the requisite treatment standards for the bag house powder mixed with wastewater or the hazardous waste contained in dredged sediments before land disposing of such materials in the lagoons, waste pile, and geobags.

165.    Calgon Carbon violated state and federal RCRA statutory and regulatory provisions by land disposing restricted wastes without meeting applicable treatment standards.

### EIGHTH CAUSE OF ACTION

Failure to Comply with Land Disposal Restriction Notification Requirements

166. The allegations contained in paragraphs 1-22 and 31-146 are realleged and incorporated by reference herein.

167. Pursuant to 401 K.A.R. 37:010, Section 7 and 40 C.F.R. § 268.7(a)(2), a generator shipping hazardous waste offsite must send a one-time written notice to each facility receiving the hazardous waste that the hazardous waste does not meet the treatment standards in 40 C.F.R. Part 268, and as such is prohibited from land disposal.

168. Calgon Carbon sold its dredged material containing hazardous waste to a different, unrelated company for coal blending without providing the appropriate notification that the hazardous waste is restricted from land disposal.

169. Calgon Carbon has violated state and federal regulations by failing to ship its hazardous waste with the appropriate land disposal restriction notice.

## NINTH CAUSE OF ACTION

Failure to Document Weekly Inspections of Containers Stored for 90 Days or Less

170. The allegations contained in paragraphs 1-22 and 31-146 are realleged and incorporated by reference herein.

171. Pursuant to 401 KAR 35:020, Section 6(4) and 40 C.F.R. § 265.15, the owner or operator of a facility must record inspections of containers stored in the 90 day or less accumulation area and keep those records for at least three years following the inspection.

172. EPA's inspector observed containers in an outdoor storage area near the Carbon Regeneration Unit, a 90 day or less accumulation area that were labeled as hazardous waste. Calgon Carbon's inspection logs only specified that inspected containers are from the permitted storage area.

173. Calgon Carbon is not documenting weekly inspections for containers in the 90 day or less accumulation area.

174. Calgon Carbon has violated state and federal regulations by failing to document weekly

inspections in the 90 day or less accumulation area.

## TENTH CAUSE OF ACTION

Failure to Maintain Monitoring Information and Calibration Records under the CWA

175.    The allegations contained in paragraphs 23-30 are realleged and incorporated by reference herein.

176.    Pursuant to 401 KAR 5:065, Section 1 (10) and 40 C.F.R. Part 503, Calgon Carbon is required to retain records of all water monitoring information, including all calibration records, for a period of at least three years.

177.    Calgon Carbon's NPDES permit, Part 1 requires Calgon Carbon to sample Outfalls 001, 002, and 003 for pH.

178.    Pursuant to 401 KAR 5:065, Section 1(10)(d), monitoring shall be conducted according to test procedures approved under 40 C.F.R. Part 136, unless other test procedures have been specified in the permit.

179.    Calgon Carbon's NDPES Permit does not specify test procedures for sampling pH.

180.    Pursuant to 40 C.F.R. Section 136.3, Table 1B, 28, Calgon Carbon is required to calibrate pH sampling equipment in accordance with Standard Method 4500-H+B, the "Electrometric Method." The Electrometric Method requires temperature to be recorded when conducting pH calibrations.

181.    Calgon Carbon failed to record the temperature on each of its monthly pH calibration records at various times since at least September 2004.

182.    Calgon Carbon violated its NPDES permit and state and federal CWA regulations by failing to calibrate its sampling equipment and by failing to record the temperature in its pH calibration records.

## ELEVENTH CAUSE OF ACTION

Sample Holding Times Exceeded Allowable Time Frames

183.    The allegations contained in paragraphs 23-30 and 147-154 are realleged and incorporated by reference herein.

184.    Calgon Carbon's NPDES permit requires it conduct monthly sampling for total residual chlorine ("TRC") at Outfall 002.    Part II of the NPDES permit states that all conditions of KPDES regulation 401 KAR 5:065, Section 1 apply to discharges authorized by the permit.

185.    Pursuant to 401 KAR 5:065, Section 1(10)(d) and 40 C.F.R. Part 503, water monitoring shall be conducted according to test procedures approved under 40 C.F.R. Part 136, unless other test procedures have been specified in the permit.

186.    No other test procedures for water monitoring are specified in the permit.

187.    Pursuant to 40 C.F.R. § 136.3, Table II, Sub-table IB, the TRC sample maximum holding time is 15 minutes; the fecal coliform ("FC") maximum holding time is 6 hours; the biochemical oxygen demand ("BOD") maximum holding time is 48 hours.

188.    During EPA's September 2005 inspection, EPA learned that Calgon Carbon had exceeded the 15 minute holding time for TRC, FC, and BOD each month from September 2004 through September 2005.

189.    Calgon Carbon violated its NPDES permit and state and federal CWA regulations by exceeding holding times between September 2004 and September 2005.

### TWELFTH CAUSE OF ACTION

#### Effluent Violations

190.    The allegations contained in paragraphs 23-30 and 147-161 are realleged and incorporated by reference herein.

191.    Calgon Carbon's NPDES permit requires monitoring and sampling and establishes limitations on certain pollutants discharged from Calgon Carbon's Outfalls 001, 002, and 003.

192.    Pursuant to its NPDES permit, Calgon Carbon must monitor the pollutants in its discharges and report the results in monthly discharge monitoring reports.

193.    EPA has identified over 50 violations of the effluent limitations in the past five years for pollutants set forth in its NDPES permit.

194.    Calgon Carbon violated its NPDES permit and state and federal CWA regulations by

exceeding effluent limits in its NPDES permit for total suspended solids ("TSS"), oil and grease, total phenols. and ph at Outfall 001.

195.    Calgon Carbon violated its NPDES permit and state and federal CWA regulations by exceeding effluent limits in its NPDES permit for TSS, BOD, FC, TRC, dissolved oxygen ("DO"), and pH at Outfall 002.

196.    Calgon Carbon violated its NPDES permit and state and federal CWA regulations by exceeding effluent limits in its NDPES permit for pH at Outfall 003.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, United States, prays for judgment against Defendant, Calgon Carbon, as follows:

1.    Assess civil penalties against Calgon Carbon for the violations of RCRA alleged in the First through Ninth Causes of Action in this Complaint, not to exceed $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and not to exceed $37,500 per day for each violation thereafter under Section 3008(a)(3) and (g) of RCRA, 42 U.S.C. § 6928(a)(3) and (g); 40 C.F.R. § 19.4.

2.    Assess civil penalties against Calgon Carbon for the violations of the CWA alleged in the Tenth through Twelfth Causes of Action in this Complaint, not to exceed $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and not to exceed $37,500 per day for each violation thereafter under Section 402 of the CWA, 33 U.S.C. § 1342; 40 C.F.R. § 19.4.

3.    Order Calgon Carbon to remedy past RCRA violations and undertake appropriate corrective action, as necessary;

4.    Grant the United States such other and further relief as this Court deems just and proper.

Respectfully submitted,


/s/Robert G. Dreher
ROBERT G. DREHER
Acting Assistant Attorney General
U.S. department of Justice
Environment and Natural Resources Division


/s/ William A. Weinischke
WILLIAM A. WEINISCHKE
Senior Trial Attorney
U.S. Department of Justice
Environmental and Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 514-4592
BillWeinischke@usdoj.gov


KERRY B. HARVEY
United States Attorney

/s/Robin Gwinn
ROBIN GWINN
Assistant United States Attorney


OF COUNSEL:

JOAN REDLEAF DURBIN
Senior Attorney
Office of Environmental Accountability
U.S. EPA, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303
(404) 562-9544
Redleave-durbin.joan@epa.gov