IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. Q: 13-CV-158-HRW |
| v. ) | |
| ) | |
| CALGON CARBON CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ————————————————————) | |

## CONSENT DECREE

## TABLE OF CONTENTS

I.    JURISDICTION AND VENUE ............................................................................... -6-

II.   APPLICABILITY ................................................................................................ -7-

III.  DEFINITIONS ..................................................................................................... -8-

IV.  CIVIL PENALTIES ........................................................................................... -11-

V.   COMPLIANCE REQUIREMENTS ..................................................................... -12-

VI.  REPORTING REQUIREMENTS ......................................................................... -20-

VII. STIPULATED PENALTIES ............................................................................... -22-

VIII. FORCE MAJEURE ............................................................................................. -26-

IX.  DISPUTE RESOLUTION ................................................................................... -28-

X.   INFORMATION COLLECTION AND RETENTION ........................................... -30-

XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................ -33-

XII.  COSTS .............................................................................................................. -34-

XIII. NOTICES .......................................................................................................... -34-

XIV. EFFECTIVE DATE ........................................................................................... -36-

XV.  RETENTION OF JURISDICTION ...................................................................... -36-

XVI. MODIFICATION .............................................................................................. -36-

XVII. TERMINATION ............................................................................................... -37-

XVIII. PUBLIC PARTICIPATION ............................................................................... -37-

XIX. SIGNATORIES/SERVICE ................................................................................. -38-

XX.  INTEGRATION... ............................................................................................. -38-

XXI. FINAL JUDGMENT ......................................................................................... -39-

XXII. APPENDICES ................................................................................................... -39-

## CONSENT DECREE

**WHEREAS**, Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency (EPA), has filed a complaint in this action (Complaint), concurrently with this Consent Decree, alleging that Defendant, Calgon Carbon Corporation (Calgon Carbon), has violated Kentucky Revised Statutes (KRS) Chapter 224.46, the Resource Conservation and Recovery Act (RCRA), 42 United States Code (U.S.C.) § 6901 et seq., and the applicable regulations in 401 Kentucky Administrative Regulations (KAR) Chapters 31-38, and 40 Code of Federal Regulations (C.F.R.) Parts 260-270, at its Big Sandy Facility in Catlettsburg, Kentucky (Facility). In addition, the Complaint alleges that Calgon Carbon violated Sections 301 and 402 of the Clean Water Act (CWA), 33 U.S.C. §§ 1311 and 1342;

**WHEREAS**, the Complaint against Defendant alleges that Calgon Carbon violated RCRA hazardous waste permit conditions, RCRA interim status conditions, and other RCRA hazardous waste management requirements at the Facility. In addition, the Complaint alleges that Calgon Carbon violated CWA National Pollutant Discharge Elimination System (NPDES) permit conditions and exceeded effluent limitations at the Facility;

**WHEREAS**, the Facility manufactures virgin carbon products and regenerates activated carbon, which is used in purification systems for drinking water, wastewater, and pollution abatement, as well as industrial and commercial manufacturing applications;

**WHEREAS**, the Facility processes spent activated carbon in a hazardous waste unit called a Carbon Regeneration Unit (CRU). The CRU is filled with spent carbon, which is heated in a furnace to approximately 1,600-1,700 degrees F to incinerate volatile organic compounds and other contaminants adsorbed in the carbon;

**WHEREAS**, on October 3, 1990, the Commonwealth of Kentucky issued the Facility a RCRA permit;

**WHEREAS**, on March 13, 2003, the Commonwealth of Kentucky issued the Facility an NPDES permit;

**WHEREAS**, on September 20-21, 2005, EPA and the Kentucky Department for Environmental Protection (KYDEP) conducted a multi-media inspection of the Facility. During the inspection and after review of documents from the Facility, EPA discovered RCRA and CWA alleged violations at the Facility. On January 20, 2007 and August 4, 2008, EPA issued Calgon Carbon notices of violation for the RCRA and CWA violations at the Facility;

**WHEREAS**, included within the scope of the violations alleged by EPA was the unauthorized use of baghouse dust from the carbon reactivation portion of the Facility for neutralization of acidic wastewaters from other processes at the Facility during the time period from approximately 1992 to approximately August 2008. The Parties disagree regarding whether such reuse of the baghouse dust comports with Kentucky regulations on reuse and recycling at 401 KAR Chapter 31:010 (40 C.F.R. § 261.2), and further disagree as to whether the use of the baghouse dust requires characterization of the Wastewater Lagoons and the Residual Solid Waste Landfill as "Hazardous Waste Management Units" as that term is defined in the Kentucky regulations at 401 KAR Chapter 31:005 (40 C.F.R. § 260.10);

**WHEREAS**, the objective of the Parties in this Consent Decree is to resolve the civil claims alleged in the Complaint by establishing certain injunctive relief whereby Calgon Carbon shall modify certain operating practices with respect to its management of hazardous wastes, by implementing environmental remediation, and by assessing an appropriate penalty;

4

**WHEREAS**, Calgon Carbon has conducted itself in good faith in its discussions with the Plaintiff concerning the violations alleged in the Complaint, and has already implemented certain operational changes, remedial actions and corrective measures at the Facility, obviating the need for certain injunctive relief;

**WHEREAS**, Calgon Carbon has assessed, performed a Human Health Risk Assessment and is remediating the Phase 1 Lagoon Solids Stockpile, and received a formal Contained-in-Determination from EPA on April 2, 2012, which was later amended on October 5, 2012 to provide for additional disposal options. Both the Contained-in-Determination and Amendment are attached hereto as Appendix A;

**WHEREAS**, Calgon Carbon has assessed, performed a Human Health Risk Assessment, and is remediating Wastewater Lagoon solids located in Geobags at the Facility, and received an informal Contained-in-Determination from EPA on October 30, 2012. Calgon Carbon submitted a formal request for a Contained-in-Determination for the Geobags on January 30, 2013, and received a formal Contained-in-Determination on July 29, 2013. Both the informal and formal Contained-in-Determinations for the Geobags are attached hereto as Appendix B.

**WHEREAS**, Calgon Carbon has assessed the solids currently in place in the Wastewater Lagoons, and performed a Human Health Risk Assessment, which was approved by EPA on May 31, 2013. Calgon Carbon submitted a formal request for a Contained-in-Determination for the Wastewater Lagoon solids on August 13, 2013, and received a formal Contained-in-Determination on August 23, 2013, which is attached hereto as Appendix C.

**WHEREAS,** Calgon Carbon has prepared and submitted to EPA a document entitled, "Phase 2 Lagoon Solids Stockpile Sampling Work Plan and QAPP Amendment," dated August

5

14, 2013 (which is attached hereto as Appendix D), and received written approval from EPA for said document on August 19, 2013 (attached hereto as Appendix E).

**WHEREAS**, by agreeing to entry of this Consent Decree, Calgon Carbon makes no admission of law or fact with respect to the allegations in the Complaint, and continues to deny any non-compliance or violation of any law or regulation identified therein or in this Consent Decree. For the purpose of avoiding litigation among the parties; however, Calgon Carbon agrees to the requirements of this Consent Decree; and

**WHEREAS**, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE**, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), below, and with the consent of the Parties,

**IT IS HEREBY ADJUDGED, ORDERED, AND DECREED** as follows:

### I. JURISDICTION AND VENUE

1.        This Court has jurisdiction over the subject matter of this action, pursuant to 42 U.S.C. § 6928(a), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, and 1355, and over the Parties. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district. For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2.    For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Kentucky Revised Statutes, KRS Chapter 224.46520, Section 3005 of RCRA, 42 U.S.C. § 6925, and the implementing regulations in 401 KAR Chapters 32-38 and 40 C.F.R. Parts 260-270; as well as Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342.

## II. APPLICABILITY

3.    The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.    No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligations to ensure that the terms of the Decree are implemented unless and until:

a.    Excluding a transfer as proposed in subsection e. of this Paragraph, the transferee agrees in writing to undertake the obligations required by this Consent Decree with respect to the Facility being transferred, and to intervene as a Defendant in this action for the purpose of being bound by the applicable terms of this Consent Decree;

b.    The United States after receiving information sufficient to demonstrate that the transferee has the technical and financial means to comply with the applicable obligations of this Consent Decree, consents in writing to substitute the transferee for the Defendant with respect to such obligations;

c.    The Court approves such substitution;

7

d.  At least thirty (30) Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee. Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree.

e.  Calgon Carbon may transfer ownership or operation of the Facility to an affiliate or wholly-owned subsidiary of Calgon Carbon without following the requirements of this Paragraph 4; provided, however, that in that event Calgon Carbon shall remain subject to this Consent Decree and a guarantor of the performance of the applicable obligations of this Consent Decree by such affiliate or wholly-owned subsidiary.

5.  Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract entered into after the Effective Date of this Consent Decree upon performance of the work in conformity with the terms of this Consent Decree.

6.  In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, or employees to take any actions necessary to comply with the provisions of this Consent Decree.

### III. DEFINITIONS

7.  Terms used in this Consent Decree that are defined in RCRA, the CWA or in regulations promulgated pursuant to these statutes shall have the meanings assigned to them in

the statutes or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "Complaint" shall mean the complaint filed by the United States in this action;

b. "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXII);

c. "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

d. "Defendant" shall mean Calgon Carbon Corporation;

e. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

f. "Effective Date" shall have the definition provided in Section XIV.

g. "Facility" shall mean Defendant's Big Sandy Facility located in Catlettsburg, Kentucky, and includes the Residual Solid Waste Landfill;

h. "KYDEP" shall mean the Kentucky Department for Environmental Protection;

i. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

j. "Parties" shall mean the United States, acting on behalf of EPA, and Defendant;

k.  "Phase 1 Lagoon Solids Stockpile" shall mean the portion of the pile of material dredged from the Wastewater Lagoons and located adjacent to the Wastewater Lagoons that was the subject of the Contained-in-Determination issued by EPA on April 2, 2012 and amended by letter dated October 5, 2012;

l.  "Phase 2 Lagoon Solids Stockpile" shall mean the solids remaining in the Lagoon Solids Stockpile that were not the subject of the Contained-in-Determination issued by EPA on April 2, 2012 and amended by letter on October 5, 2012;

m.  "QAPP" shall mean a Quality Assurance Project Plan;

n.  "Residual Solid Waste Landfill" shall mean the State-permitted solid waste landfill, at the Facility, located southwest of the operating plant on a tract of land west of U.S. 23 South, that was used to dispose of carbon sediments/sludges from the Wastewater Lagoons;

o.  "Section" shall mean a portion of this Decree identified by a Roman numeral.

p.  "State" or "Commonwealth" shall mean the Commonwealth of Kentucky;

q.  "United States" shall mean the United States of America, acting on behalf of EPA;

r.  "Wastewater Lagoons" shall mean the three wastewater lagoons, or ponds, located at the Facility, which have been used for collection, treatment, storage and

10

disposal of wastewater and stormwater runoff from the Facility. The Wastewater Lagoons are identified in Appendix F.

s.    "Work Plan" shall mean the detailed plan prepared by Defendant to satisfy the requirements of Paragraph 14 of this Consent Decree. The requirements for the Work Plan are presented in Section V (Compliance Requirements).

## IV. CIVIL PENALTIES

8.    Within thirty (30) Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $1,374,000 as a civil penalty in full settlement of all violations of RCRA alleged in the Complaint; and the sum of $226,000, as a civil penalty in full settlement of all violations of the CWA alleged in the Complaint. If any portion of the civil penalty due to the United States is not paid when due, Defendant shall pay interest on the amount past due accruing from the Effective Date through the date of payment at the rate specified in 28 U.S.C. § 1961.

9.    Defendant shall pay the civil penalties due by FedWire Electronic Funds Transfer (EFT) to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of Kentucky, 260 West Vine Street, Suite 300, Lexington, Kentucky, 40507-1612, (859) 233-2661. At the time of payments, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter which shall state that the payments are for the civil penalties owed pursuant to the Consent Decree in United States v. Calgon Carbon Corporation, and shall reference the civil action number and DOJ case number 90-7-1-09536, to the United States in accordance with

11

Section XIII of this Decree (Notices); by email to: acetsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance
> Office 26 Martin Luther King
> Drive Cincinnati, Ohio 45268

10.       Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

11.       [Intentionally left blank]

## V. COMPLIANCE REQUIREMENTS

12.       Within sixty (60) days after the Effective Date of this Consent Decree, Defendant shall implement the approved Phase 2 Lagoon Solids Stockpile Sampling Work Plan and QAPP in Appendix D in accordance with its terms and in accordance with the schedule contained therein. Defendant may request an extension from EPA to the schedule approved pursuant to the Phase 2 Lagoon Solids Stockpile Sampling Work Plan and QAPP Amendment for weather conditions (such as very wet weather or cold weather) that make it physically difficult to manage the Phase 2 Lagoon Solids Stockpile in a safe manner or with typical handling methods.

13.       Defendant shall certify that it completed all project tasks related to the Phase 2 Lagoon Solids Stockpile Sampling Work Plan and QAPP Amendment and met all quality objectives and criteria and documentation requirements for sampling, decontamination, handling, custody, analytical method application, quality control, equipment testing, inspection and maintenance, instrument calibration, data management and assurance, assessment and oversight, data validation and usability, data verification, delivery of all data and test results, and any other objectives and or criteria required by the

QAPP and Work Plan in Appendix D and shall also ensure that all officers, directors, employees, agents, and contractors comply with these requirements.

14.         Within ninety (90) Days from the Effective Date of this Consent Decree, Defendant shall submit a site specific QAPP and Work Plan to address sampling and testing of the groundwater at Defendant's Residual Solid Waste Landfill. The Work Plan shall document the methodology and provide a specific schedule that the Defendant shall use to conduct the work, and to provide the results to EPA and KYDEP. Upon acceptance of the QAPP and Work Plan by EPA, Defendant shall commence implementation of the Work Plan within fifteen (15) Days. The Work Plan shall include, but not be limited to, the following:

a. The groundwater direction shall be determined.

b. Two additional permanent monitoring wells shall be constructed (one in a technically appropriate location near the closest cell toe of the Residual Solid Waste Landfill and one downgradient) based on groundwater direction to complement the existing four monitoring wells. Well records for the four existing monitoring wells shall be submitted as part of the Work Plan and assessed to confirm proper construction to determine if they are acceptable to be sampled and, if necessary, shall be redeveloped. Based on the direction of groundwater flow, the groundwater shall be sampled from the two new permanent wells, and two of the existing wells that would most likely be impacted by the Residual Solid Waste Landfill. All field parameters including pH, specific conductance, turbidity, temperature, oxidation-reduction potential, and dissolved oxygen shall also be measured and recorded.

13

c. The testing for groundwater shall include two sampling events (designed to address both dry and wet seasonal conditions) for the metals (including mercury and hexavalent chromium), the volatile organic compounds, the semi-volatile organic compounds, the pesticides/herbicides, and dioxin/furans. Defendant may eliminate the requirement to sample for the pesticides/herbicides and dioxin/furans if EPA agrees with Defendant that the results for the first sampling event are non-detect for the respective parameters.

d. Groundwater results for detected constituents will be compared to the most recent Federal Maximum Contaminant Levels (MCLs) for drinking water published in 40 C.F.R. Part 141. In the absence of an MCL, the Maximum Groundwater Contaminant Levels published for the Kentucky Solid Waste program will be used (401 KAR 47:030, Environmental Performance Standards, Section 6). For detected constituents without a comparison value in these first two sources, the acute Kentucky Warm Water Aquatic Habitat Criteria for surface water (401 KAR 10:031, Surface Water Standards, Section 6) will be used for comparison. These screening levels are considered by EPA and the Defendant to be guidelines and may be used to assess whether a release may have occurred but will not be used as decisional criteria. Defendant will also make a comparison between upgradient and downgradient sample locations to evaluate the potential for impacts to the groundwater from the Residual Solid Waste Landfill.

e. The same table formats to report the analyte results shall be used as in previous reports.

14

f. The schedule shall include, but not be limited to, notification to EPA within three (3) business Days prior to work beginning on the Residual Solid Waste Landfill and the submittal of bi-weekly work plan progress reports upon beginning work on the Residual Solid Waste Landfill and until completion of the work.

Notification to EPA may be made in writing, electronically, or by telephone call.

Upon completion of the two rounds of groundwater sampling required by this Paragraph 14 and the submission of the results to EPA and KYDEP as required by the to be approved Work Plan, Defendant shall have completed all obligations to EPA under this Consent Decree relating to the Residual Solid Waste Landfill. EPA acknowledges that after Defendant's completion of the two rounds of groundwater sampling required by this Paragraph, KYDEP shall have the responsibility to address the Residual Solid Waste Landfill as a Solid Waste Management Unit pursuant to the RCRA corrective action program and/or a permitted state solid waste disposal facility. This Consent Decree acknowledges that the Defendant has initiated a site investigation and completed a draft report pursuant to a Preliminary RCRA Facility Investigation and a RCRA Facility Investigation entitled, "Initial Groundwater Characterization for the Landfill Area," dated June 15, 1994. EPA acknowledges that Defendant may have completed some of the tasks required in Paragraph 14 of the Consent Decree and/or that Defendant may have available some of the information and data required by this Consent Decree. This previous work may be used to meet the requirements of this Consent Decree, upon submission to and formal approval by EPA. Defendant shall certify that it completed all project tasks for the Residual Solid Waste Landfill Work Plan and met all quality objectives and criteria and documentation requirements for sampling, decontamination, handling, custody, analytical method application, quality control, equipment testing, inspection and maintenance, instrument calibration, data

15

management and assurance, assessment and oversight, data validation and usability, data verification, delivery of all data and test results, and any other objectives and or criteria required by the QAPP and Work Plan and shall also ensure that all officers, directors, employees, agents, and contractors comply with these requirements.

15.     All work undertaken pursuant to this Consent Decree shall be developed and performed in a manner consistent with RCRA and its implementing regulations and all relevant EPA guidance documents.

16.     Defendant may submit all documents, plans, proposals, QAPPs, and the Work Plan described in the proceeding paragraphs to EPA electronically on the due date; provided that two (2) hard copies shall be placed in overnight delivery to EPA on the same date. Defendant shall also submit one (1) copy to the KYDEP. All copies shall be submitted consistent with the timelines in this Consent Decree.

17.     In the event that any approved document, plan, proposal, QAPP, or Work Plan submitted pursuant to Section V of this Consent Decree (Compliance Requirements) requires modification, Defendant will notify the EPA within five (5) business Days. If the requested modification relates to any schedule approved pursuant to Section V of this Consent Decree (Compliance Requirements), or if the Parties agree that the requested modification is non-material, the requested modification shall be effective upon the written agreement of EPA and Defendant. For any material modification, the Modification provisions in Section XVI apply.

18.     Except as specifically provided in Paragraph 14 of this Consent Decree, EPA may determine that certain tasks, including further investigatory work, engineering

evaluations, or risk assessments are necessary in addition to the tasks and deliverables included in Section V of this Consent Decree (Compliance Requirements) if findings indicate that such additional work is necessary. EPA shall request in writing that Defendant perform the additional work in this situation and shall specify the basis and reasons for EPA's determination that the additional work is necessary. Within thirty (30) Days after the receipt of such request, Defendant shall have the opportunity to meet with EPA to discuss the additional work EPA has requested. Within seven (7) Days of any such meeting or thirty (30) Days after receipt of any such request from EPA, whichever is later, Defendant shall notify EPA in writing of its decision whether to undertake the additional work. If Defendant declines to undertake some or all of the additional work, EPA retains any authority it has to undertake the work or to take any other action authorized under RCRA, CERCLA or other applicable statutes or laws. Any additional work performed by Defendant under this Paragraph shall be performed in a manner consistent with this Consent Decree.

19.　　　　Except as otherwise expressly provided in this Section, this Consent Decree shall survive the issuance or denial of a RCRA permit for the Facility, and this Consent Decree shall continue in full force and effect after either the issuance or denial of such permit. Accordingly, Defendant shall continue to be liable for the performance of obligations under this Consent Decree notwithstanding the issuance or denial of such permit. If the Facility is issued a RCRA permit and that permit expressly incorporates all or a part of the requirements of this Consent Decree, or expressly states that its requirements are intended to replace some or all of the requirements of this Consent Decree, Defendant may request a modification of this Consent Decree and shall, with the EPA's approval, be relieved of liability under this Consent Decree for those specific obligations.

20.    Defendant may seek Termination of this Consent Decree in accordance with Section XVII of this Consent Decree (Termination) once Defendant has performed the tasks described in Paragraphs 12 through 14; and all other obligations of this Consent Decree have been met, provided, however, that Defendant shall continue to comply with the requirements in Paragraph 59 (relating to document retention) after termination.

21.    After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, other than the annual report submitted pursuant to Paragraph 27, EPA shall in writing: a) approve the submission; b) approve the submission with specified conditions, which would not include any additional fieldwork; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission. Any action taken by EPA pursuant to this paragraph shall not require Defendant to perform any additional fieldwork beyond that approved in the Work Plan for the Residual Solid Waste Landfill.

22.    If the submission is approved pursuant to Paragraph 21.a, Defendant shall perform all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 21.b or 21.c, Defendant shall, upon written direction from EPA, perform all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section IX of this Consent Decree (Dispute Resolution).

23.    If the submission is disapproved in whole or in part pursuant to Paragraph 21.c or 21.d, Defendant shall, within thirty (30) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or

18

disapproved portion thereof, for approval. If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the approved resubmission and Section V of the Consent Decree (Compliance Requirements).

24.     Any stipulated penalties applicable to the original submission, as provided in Section VII of this Consent Decree (Stipulated Penalties), shall accrue during the 30-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Consent Decree, the stipulated penalties applicable to the original submission shall be due and payable upon receipt of written demand from EPA notwithstanding any subsequent resubmission.

25.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, pursuant to Paragraph 21.c. or Paragraph 21.d., EPA may seek stipulated penalties and again require Defendant to correct any deficiencies, subject to Defendant's right to invoke Dispute Resolution per Section IX.

26.     Where any compliance obligation under this Section requires Defendant to obtain a federal, State, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section VIII of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI. REPORTING REQUIREMENTS

27.        Defendant shall submit the following reports:

a.        By January 31 after the end of each calendar year after lodging of this Consent Decree, until termination of this Consent Decree pursuant to Section XVII, Defendant shall submit a report for the preceding year that shall include the status of any compliance measures; completion of milestones; problems encountered or anticipated, together with implemented or proposed solutions; status of permit applications; status of operation and maintenance; and reports to State agencies regarding measures required to be taken in this Consent Decree. Defendant's annual report shall follow the outline provided in Appendix G.

b. The annual report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration, in writing, within ten (10) business Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation,

20

within thirty (30) Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII of this Consent Decree (Force Majeure).

28.     Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Consent Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

29.     All reports shall be submitted to the persons designated in Section XIII of this Consent Decree (Notices).

30.     Each report submitted by Defendant under this Section shall be signed by a corporate officer of Defendant or the Plant Manager of the Facility and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

21

31.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by RCRA, CWA, or their implementing regulations, or by any other federal, State, or local law, regulation, or permit.

32.     Any information provided by Defendant pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law, provided, however, that nothing in the Complaint or this Consent Decree shall be treated as an admission or evidence of any violation of RCRA or the CWA, their implementing regulations, or any State or local equivalent in any litigation or forum whatsoever.

## VII. STIPULATED PENALTIES

33.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Consent Decree, including under any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree. A written demand for the payment of stipulated penalties will identify the particular violation(s) to which the stipulated penalty relates; the stipulated penalty amount that the United States is demanding for each violation; and the provision of the Consent Decree on which the demand is based.

34.     Failure to Pay Civil Penalties

        a. If Defendant fails to pay the civil penalties required to be paid under Section IV of this Consent Decree when due, Defendant shall pay a stipulated penalty per Day for each Day that any part of the payment is late.

22

b. The following stipulated penalties shall accrue per violation per Day for each violation of a requirement of Section IV of this Consent Decree (Civil Penalties):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th Day |
| $1000 | 15th through 30th Day |
| $2500 | 31st Day and beyond |

35.     Failure to Comply with Compliance Requirements

a.     If Defendant fails to comply with any Compliance Requirement in Section VI of this Consent Decree, Defendant shall pay a stipulated penalty per Day for each Day that any Compliance Requirement is not fulfilled.

b.     The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Section V of this Consent Decree (Compliance Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th Day |
| $1000 | 15th through 30th Day |
| $2500 | 31st Day and beyond |

36.     Failure to Comply with Reporting Requirements

a.     If Defendant fails to comply with any Reporting Requirement in Section VI of this Consent Decree, Defendant shall pay a stipulated penalty per Day for each Day that any Reporting Requirement is not fulfilled.

23

b.      The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Section VI of this Consent Decree (Reporting Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th Day |
| $500 | 15th through 30th Day |
| $1000 | 31st Day and beyond |

37.      Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

38.      Defendant shall pay any stipulated penalty within twenty (20) Days of receiving the United States' written demand as described in Paragraph 33 above, unless the Defendant invokes Dispute Resolution pursuant to Section IX of this Consent Decree.

39.      The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

40.      Stipulated penalties shall continue to accrue as provided in this Section. during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties and interest owed to the United States within thirty (30) Days of the date of the United States' written demand, pursuant to Paragraph 33, or within fifteen (15) Days of the date of dispute agreement or of a decision of EPA that is not appealed to the Court, whichever is later.

24

b.    If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties and interest the Court determines are owed within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.    If any Party appeals the Court's decision, Defendant shall pay all applicable and appropriate accrued penalties and interest the Court determines are owed, within twenty (20) Days of receiving the final appellate court decision.

d.    If Defendant prevails in whole or in part, it shall not be responsible for the applicable and appropriate accrued penalties and interest.

41.    Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

42.    If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

43.    Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.

25

## VIII. FORCE MAJEURE

44.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

45.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA, within 48 hours of when Defendant first knew that the event might cause a delay. Within seven (7) Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure event. Failure to comply with the above requirements shall

preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's agents or contractors knew or should have known.

46.       If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. Defendant shall not be liable for stipulated penalties for the delayed performance of obligations affected by the force majeure event for the period of any such extension. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

47.       If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

48.       If Defendant elects to invoke the dispute resolution procedures set forth in Section IX of this Consent Decree (Dispute Resolution), it shall do so no later than thirty (30) Days after receipt of EPA's notice in Paragraph 47. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 44 and 45, above. If Defendant carries this

burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX. DISPUTE RESOLUTION

49.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

50.     Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed sixty (60) Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by EPA shall be considered binding unless, within thirty (30) Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

51.     Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

28

52.     The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

53.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within fifteen (15) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

54.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

55.     Standard of Review

        a.      Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 51 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and

29

all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

      b.    Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under this Section, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of this Consent Decree.

56.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 40. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X. INFORMATION COLLECTION AND RETENTION

57.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

      a.    Monitor the progress of activities required under this Consent Decree;

      b.    Verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

       c.       Obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

       d.       Obtain documentary evidence, including photographs and similar data; and

       e.       Assess Defendant's compliance with this Consent Decree.

58.       Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant. Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

59.       Until four (4) years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that address the work that is to be performed by the Defendant or relate in any manner to EPA's enforcement of this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

60.       At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements

of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.

61.      In connection with any request for documents, records, or other information pursuant to this Consent Decree, Defendant may assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law, provided that Defendant shall not assert a legal privilege for any data, records or information (excluding legal advice) generated or received in connection with Defendant's obligations pursuant to the requirements of this Consent Decree. If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.

62.      Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information (CBI) under 40 C.F.R. Part 2. provided that Calgon Carbon shall not assert a CBI claim with respect to any physical, sampling, monitoring, or analytical data. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

63.      This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or State laws, regulations, or permits.

32

## XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

64.        This Consent Decree resolves only the civil liability of the Defendant for the violations alleged in the Complaint filed in this action through the date of lodging of the Consent Decree with the Court.

65.        The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under federal or State environmental statutes or their implementing regulations, or under other federal or State laws, regulations, or permit conditions, and Calgon Carbon in any such action shall not assert any defense based upon the contention that such claims raised by the Plaintiff were or should have been brought in the instant case under principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other such defense. The United States further retains all authority and reserves all legal and equitable rights to take any and all actions authorized by law to protect human health and the environment, including all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

66.        This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.

The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with RCRA, the CWA, or with any other provisions of federal, State, or local laws, regulations, or permits.

67.    This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

68.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII. COSTS

69.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty due but not paid or any stipulated penalties ultimately determined to be due but not paid by Defendant unless Defendant prevails in such action.

## XIII. NOTICES

69.    Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

34

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice Box 7611 Ben
Franklin Station Washington, D.C. 20044-7611

Re: DOJ No. 90-7-1-09536

and

William Kappler, RCRA Division
Joan Redleaf Durbin, OEA
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street, SW
Atlanta, GA 30303
(404) 562-8498
(404) 562-9544

To EPA:

William Kappler
Joan Redleaf Durbin
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street, SW
Atlanta, GA 30303
(404) 562-8498
(404) 562-9544

To Defendant:

Richard D. Rose
Senior Vice President, General Counsel, and Secretary
Calgon Carbon Corporation
400 Calgon Carbon Drive
Pittsburgh, PA 15205
(412) 787-6786

Dean A. Calland, Esq.
Babst, Calland, Clements, & Zomnir,
Two Gateway Center
Pittsburgh, PA 15222
(412) 394-5408

70.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

71.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or placement of the notice with a reputable overnight express delivery service for delivery the next business day, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV. EFFECTIVE DATE

72.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV. RETENTION OF JURISDICTION

73.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI. MODIFICATION

74.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

75.     Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that the

36

Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII. TERMINATION

76.     After Defendant has complied with all requirements of this Consent Decree including those relating to Section V (Compliance Requirements), and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

77.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreements that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

78.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX of this Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Section IX, until ninety (90) Days after service of its Request for Termination.

## XVIII. PUBLIC PARTICIPATION

79.     This Consent Decree shall be lodged with the Court for public notice and comment for a period of not less than thirty (30) Days in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding

the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX. SIGNATORIES/SERVICE

80.       Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice and EPA certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

81.       This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable local rules of this Court including, but not limited to, service of a summons.

## XX. INTEGRATION

82.       This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXI. FINAL JUDGMENT

83.     Upon approval and entry of this Consent Decree by the Court, this Consent
Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXII. APPENDICES

84.     The following appendices are attached to and part of this Consent
Decree:

>       "Appendix A" is the formal Contained-in-Determination and
>       subsequent Amendment for the Phase 1 Lagoons Stockpile.
>
>       "Appendix B" is the informal and formal Contained-in-Determinations
>       for the Geobags.
>
>       "Appendix C" is the formal Contained-in-Determination for the
>       Wastewater Lagoon solids.
>
>       "Appendix D" is the approved Phase 2 Lagoons Solids Stockpile
>       Sampling Work Plan and QAPP Amendment.
>
>       "Appendix E" is the formal approval of  Phase 2 Lagoons Solids
>       Stockpile Sampling Work Plan and QAPP Amendment.
>
>       "Appendix F" is the picture denoting the Wastewater Lagoons at the
>       Facility.
>
>       "Appendix G" is the approved outline for the annual report described in
>       Paragraph 27.

IT IS HEREBY ORDERED that the foregoing Consent Decree be entered as an Order of
this Court.

Dated and entered this 20th day of February, 2014.

Signed By:
Henry R. Wilhoit, Jr.
United States District Judge

UNITED STATES DISTRICT JUDGE
Eastern District of Kentucky

FOR PLAINTIFF UNITED STATES OF AMERICA:

/s/ ROBERT G. DREHER
Acting Assistant Attorney General
U.S. Department of Justice
Environmental & Natural Resources Division

/s/WILLIAM A. WEINISCHKE
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 2044-7611
(202) 514-4592

/s/V. ANNE HEARD
V. Ann Heard
Acting Regional Counsel and Director
Office of Environmental Accountability
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960

/s/JOAN REDLEAF DURBIN
Joan Redleaf Durbin
Senior Attorney
Office of Environmental Accountability, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960

/s/RICHARD D. ROSE
Richard D. Rose
Sr. Vice President, General Counsel and Secretary
Calgon Carbon Corporation
400 Calgon Carbon Drive
Pittsburg, PA 15205

KERRY B. HARVEY
UNITED STATES ATTORNEY

/s/ROBIN GWINN
Robin Gwinn
Assistant United States Attorney
260 West Vine Street, Suite 300
Lexington, Kentucky 40507-1671
(859) 233-2661